## Troy Record Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 9202.   Promulgated March 29, 1928.

*Lawrence A. Baker, Esq.*, for the petitioner.
*Thomas M. Wilkins, Esq.*, for the respondent.

OPINION.

Love: The petitioner's first contention to the effect that the Commissioner erred in determining that its profits tax was not in excess of the profits tax computed with reference to representative corporations, is not sustained by proof.

No evidence whatever was offered with respect to representative corporations or to the profits tax computed with reference thereto. The Commissioner was not required by subpœna to furnish the comparatives used in reaching the determination with respect to petitioner's profits tax. Consequently, on the record, we must approve the Commissioner's action in regard thereto.

The next contention advanced by the petitioner is that the Commissioner erred in failing to include in invested capital the amount in excess of gross income which it borrowed and expended during the years 1896 to 1905, inclusive, for current operating expenses and advertising campaigns. In support of this contention the petitioner takes the position that the amount in question was expended in the acquisition of a valuable asset, namely, a going and profitable newspaper. Hence, it is argued, the amount should be capitalized and included in invested capital rather than be treated as an operating deficit. This contention the Commissioner controverts.

At the outset it may be stated that, even if we should hold that petitioner acquired an asset equal in value to the amount expended in excess of operating income, it does not follow that the value thereof could be included in invested capital. It is not disputed that the amount in question was borrowed, and as such it can not be included in invested capital for the obvious reason that borrowed capital is specifically excluded therefrom. However, if the amount in question were capitalized, although as such specifically excluded from invested capital, it seems clear that petitioner's invested capital would be indirectly affected in that the operating deficit would be extinguished, and to the extent that it might exist, earned surplus would be reflected in invested capital. The question before us, therefore, is whether by the expenditure of the amount in excess of operating income petitioner acquired a valuable asset and if so, the cost thereof, that is, the amount of the expenditure properly allocable thereto.

The circulation structure of a newspaper is a valuable asset. *Danville Press Inc.*, 1 B. T. A. 1171. There is no doubt that petitioner during the years 1896 to 1905, inclusive, was acquiring and did acquire a valuable asset in the form of a representative circulation structure. We are unable to say, however, that the excess of expenditures over operating income during those years represents the cost

thereof. It seems that in acquiring this asset, petitioner did so as the result of a gradual process and not as the result of transactions that can be connected with definite expenditures therefor.

Petitioner made no attempt to allocate the amount expended over and above operating income to circulation structure on the one side and to operating expense on the other. Admittedly, the amount went for employees' salaries, paper, ink, and other current operating expenses as well as for advertising campaigns, and it was entered on the books as an operating expense. We are unable, therefore, to determine what portion of the total amount so expended should be allocated to the acquisition of circulation structure, that is, to the purchase of that asset in a bona fide transaction as distinguished from the gradual appreciation in value of the asset, which came into existence with the first few issues of the paper, as a result of continued publication of the paper. On the record, therefore, we must hold that the Commissioner's action in refusing to capitalize the amount expended in excess of operating income during the years 1896 to 1905, inclusive, will not be disturbed.

The petitioner's last contention is that the Commissioner erred in reducing its paid-in invested capital by the amount of $22,745.20, representing dividends paid in 1916, 1917, 1918, and 1919.

The record discloses that the Commissioner determined that the operating deficit incurred prior to 1906, which was in 1908 converted into a bonded indebtedness, existed at the time the dividends were paid. In the absence of evidence showing that the indebtedness has been paid in full or in part, the Commissioner's determination in this respect must be approved. Consequently, since the operating deficit existed at the time the dividends were paid, the Commissioner's action in reducing paid-in capital by the amount thereof must be sustained. *Willcuts* v. *Milton Dairy Co.*, 275 U. S. 215.

*Judgment will be entered for the respondent.*